# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAPHAEL BIGIO, BAHIA BIGIO, FERIAL
SALMA BIGIO AND B. BIGIO & CO.,

       Plaintiffs,

          v.

THE COCA-COLA COMPANY and THE
COCA-COLA EXPORT CORPORATION,

       Defendants.

97 CIV. 2858 (BSJ)

---

### THIRD SUPPLEMENTAL DECLARATION OF AHMED G. ABOU ALI

ARAB REPUBLIC OF EGYPT      ) ss.:

I, Ahmed G. Abou Ali, hereby declare that:

1.     I am an attorney and a partner in the law firm of Hassouna & Abou Ali, with offices located at Cairo Center, Fifth Floor, 2 Abdel Kader Hamza Street, Garden City, Cairo, Egypt. I am duly licensed to practice law in Egypt before the Courts of Appeal since 1988 and the Supreme Court of Egypt since 1999. I make this third supplemental declaration in support of the motion of the two defendants in this lawsuit, namely, The Coca-Cola Company and The Coca-Cola Export Corporation, to dismiss the Amended Complaint.

#### A.  Reaffirmance of Previous Declarations

2.     I prepared and signed three declarations previously filed this case. Copies of those declarations, dated August 19, 1997, November 19, 1997 and April 21, 2003, are attached as Exhibits A, B, and C to this declaration. I reaffirm that the material averments contained in those three previous declarations remain true and correct. To the best of my knowledge, there

AHMED G. ABOU ALI
ATTORNEY AT LAW

have been no intervening developments that warrant any change in the statements of fact and conclusions of law set forth in any of them.

### B. The Plaintiffs Have No Claim Against These Defendants For Trespass to Real Property Under Egyptian Law

3.    In a prior declaration, I explained the statute of limitations and repose under Egyptian law applicable to a claim for trespass to real property (5th paragraph, Declaration of Abou Ali dated April 21, 2003)  Under Egyptian law, the limitations period to bring that claim is three years from the date the trespass is known to the plaintiff, and a statute of repose bars a trespass claim fifteen years after the trespass began irrespective of the plaintiff's knowledge of the trespass  ([4th] paragraph, Declaration of Abou Ali dated April 21, 2003). In addition, there is no provision in Egyptian law for periods of limitations and repose to be extended because the trespass has not ended; that is, tort liability under Egyptian Civil Code does not recognize a concept of a "continuing trespass" as a way to extend the time to bring a lawsuit to redress trespass..  Furthermore, under Egyptian law, there is no claim for trespass to real property when the defendant occupies the real property under claim of right.  ENBC has occupied the real estate in question as leasehold for decades under the same lease with the record owner of the real property since in or about 1965.  ENBC's occupancy of the property under its claim of right under its leasehold is not a trespass under Egyptian law.

### C. Egyptian Law of Trespass to Personal Property

4.    Under Egyptian law, the claim of trespass to personal property is the legal claim analogous to the U.S. law claim of conversion of personal property alleged in the plaintiffs' amended complaint. The elements that must be established to prove a claim for trespass to personal property under Egyptian law are found under Article 163 of the Egyptian Civil Code: "A person committing any fault (or error), causing harm to another, is obliged to compensate

2

for the damages suffered". Thus, three elements must be present for tort liability to arise: (i) a fault or error (which may be either an act or a failure to act); (ii) damage to another; and (iii) a casual connection between the fault and damage. ENBC is a lessee of land and buildings under its claim of right under its duly recognized leasehold under Egyptian law. A claim for trespass to personal property is a tort claim under Egyptian law and is governed by the same three-year statute of limitations and fifteen year statute of repose as a claim for trespass to real property.

### D. The Plaintiffs Have No Claim Against These Defendants
### For Trespass to Personal Property Under Egyptian Law

5.    To the extent any Egyptian law claim in favor of the plaintiffs for trespass to personal property arising from a seizure of business entities, factories, bottling lines, factory equipment or other personalty referred to in the amended complaint occurred no later than 1965 (Am. Compl. ¶17), the plaintiffs' claim for the loss of those assets accrued in 1962, and the statute of limitations expired no later than 1968. The statute of repose ended no later than 1980.

6.    No new or different claim for conversion of those assets arose under Egyptian law and no new period of limitations or repose began either (i) when the Egyptian government, allegedly having seized the plaintiffs' assets in 1962, transferred them to El Nasr Bottling Company ("ENBC") or (ii) when the Egyptian government sold the shares of ENBC in a privatizing transaction to several entities in 1994. Under Egyptian law, acquiring stock in a joint stock company like ENBC, does not constitute a trespass to real or personal property that is occupied or held by the company the shares of which are bought. In fact, under Egyptian law, acquiring shareholders are not liable for any torts or unjust enrichment acts or omissions committed by a joint stock company like ENBC the shares of which they acquire.

AHMED G. ABOU ALI
ATTORNEY AT LAW

3

### E. Egyptian Law of Unjust Enrichment

7.     Egyptian law also recognizes the concept of a claim for unjust enrichment, and is also governed by the same three year statute of limitations and fifteen year statute of repose (Article 180 of the Egyptian Civil Code). Article 179 of the Egyptian Civil Code provides that "A person, even one lacking discretion, who without just cause enriches himself to the detriment of another person, is liable to the extent of his profit, to compensate such other person for the loss sustained by him...." A claim based on the theory of unjust enrichment whether relating to real or personal must satisy three basic elements: (i) enrichment of the defendant; (ii) loss incurred by the plaintiff resulting from such enrichment; and (iii) lack of legal basis for such enrichment.

### F. The Plaintiffs Have No Claim Against These Defendants For Unjust Enrichment Under Egyptian Law

8.     The "unjust enrichment" alleged in the Amended Complaint is that the defendants benefited from "unlawfully acquiring and occupying plaintiffs' real estate property and businesses . . . for their own purposes." (Am. Compl. ¶ 63). That allegation, however, does not satisfy a claim for unjust enrichment under Egyptian law both because it is no different from the plaintiffs' claims for trespass to real property and trespass to personal property, which are barred, and because no basis is alleged as to why either of the defendants named in the complaint committed any injustice or benefited improperly from their indirect purchase of shares of ENBC. The complaint also fails to allege that defendants' indirect purchase of shares of ENBC caused any loss to plaintiffs, and therefore fails to state a claim for unjust enrichment under Egyptian law.

AHMED G. ABOU ALI
ATTORNEY AT LAW

4

## Conclusion

9.      For these reasons, it is my opinion as a member of the Egyptian bar that the allegations of the plaintiffs' complaint do not set forth any claim for trespass to real property, trespass to personal property, or unjust enrichment against either of the defendants named in the lawsuit and any such claim is, based on the allegations of the complaint, barred by the periods of limitation and repose under Egyptian law.

*      *      *

I declare under penalty of perjury under the laws of the United States of America that to the best of my knowledge the foregoing is true and correct.

Executed at Cairo, Egypt on August 23, 2009.

_____

Ahmed G. Abou Ali

AHMED  G. ABOU ALI
ATTORNEY  AT LAW

# ABOU ALI DECLARATION EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RAPHAEL BIGIO, BAHIA BIGIO,　　　*
FERIAL SALMA BIGIO and　　　　　*
B. BIGIO & Co.,　　　　　　　　*
　　　　　　　　　　　　　　　*
　　　　Plaintiffs,　　　　　　*　　　97 CIV. 2858 (JSM)
　　　　　　　　　　　　　　　*
　　　　　　v.　　　　　　　　*
　　　　　　　　　　　　　　　*
THE COCA-COLA COMPANY and　　*
THE COCA-COLA EXPORT　　　　*
CORPORATION,　　　　　　　　*
　　　　　　　　　　　　　　　*
　　　　Defendants.　　　　　*

## DECLARATION OF AHMED G. ABOU ALI

ARAB REPUBLIC OF EGYPT　　　) ss
　　　　　　　　　　　　　　)

I, Ahmed G. Abou Ali, hereby declare that:

1.　　　I am an attorney and a partner in the  law firm of Hassouna & Abou Ali, with offices located at Cairo Center, Fifth  Floor, 2 Abdel Kader Hamza Street, Garden City, Cairo Egypt. I am duly licensed to practice law  in Egypt before the Courts of Appeal since 1988. I make this declaration in support of The Coca-Cola  Company's and The Coca-Cola Export Corporation's Motion  to Dismiss. This declaration is based on my  own  personal  knowledge and,  where indicated, a review of court records and other governmental records in Egypt.

AHMED  G. ABOU ALI
ATTORNEY  AT LAW

2.     I understand that plaintiffs allege that in the early 1960s the Egyptian government sequestrated and nationalized certain property belonging to them and their family. The property in question consists of land and buildings on a site in Heliopolis, (a suburb of Cairo) Egypt (the "Heliopolis Site").

3.     The Heliopolis Site was sequestrated by the Egyptian government pursuant to Decree No.140 of 1961 ("Decree 140/61"). That decree provided for the sequestration of the property of 814 individuals and families. The property sequestrated thereunder was to be administered in accordance with the provisions of Decree 138 of 1961 ("Decree 138/61"), which in turn provided for the sequestration of the property of about 167 other individuals and families. The individuals and families whose property was sequestrated pursuant to Decrees 140/61 and 138/61 represented a cross-section of the very wealthy upper class in Egypt and included Moslems, Copts and Jews[1].

4.     In 1964, Law 150 of 1964 nationalized the property that had been subject to sequestration under Decrees 138/61 and 140/61. The land and buildings at the Heliopolis Site that plaintiffs claim were sequestrated were sold by the State to Misr Insurance Company ("Misr"), a public sector company that is wholly-owned by the Egyptian State. The El Nasr Bottling Company ("ENBC") leases the land and buildings from Misr. Since leasing the land and buildings from Misr, ENBC has constructed on the site other buildings which are owned by ENBC.

5.     ENBC is engaged in the business of bottling and distributing soft drink products in Egypt. ENBC was first established in 1938 as a joint stock company pursuant to Egyptian law under the

---

[1] Sequestration and nationalization were tools used by the Egyptian government in the early 1960s as part of a program of land reform which converted Egypt from a market based economy to a centralized state-owned and state-managed economy. Property sequestrated could not be transferred or managed by the owner, although title remained in the name of the owner. Upon nationalization, title was transferred to the State

AHMED G. ABOU ALI
ATTORNEY AT LAW

name of Industry and Trade Company SICO ("SICO"). SICO was partially nationalized in 1961 and fully nationalized in 1963. Two other bottling companies that were also nationalized, Assuit Bottling Company and Tanta Bottling Company, were merged with and into SICO and the company was renamed ENBC.

6.    In 1993, ENBC was offered for sale by the Egyptian government pursuant to a program to privatize certain state-owned companies[2]. By this time, ENBC was wholly-owned by the Food Industries Company[3], an Egyptian company that is, in turn, wholly-owned by the Egyptian State, and consisted of 13 bottling plants and associated distribution and warehousing facilities throughout Egypt. Four of the sites on which the bottling plants were situated were leased by ENBC. One of the four leased sites was the Heliopolis Site, which ENBC has leased from Misr continuously since approximately 1965. Production had ceased at the Heliopolis Site shortly after the privatization of ENBC, and the site is currently used for a carpentry workshop, cooler storage and various administrative functions.

7. Competing bids for the purchase of shares of ENBC were submitted by MAC Investments S.A.E. ("MAC Investments"), an Egyptian company, and Atlantic Industries ("AI"), a Cayman Islands company that is a subsidiary of The Coca-Cola Company. MAC Investments had no prior relationship with The Coca-Cola Company. In fact, MAC Investments had previously been involved in bottling and distributing competitive soft drink products elsewhere in the Middle East.

---

2 Law 203 of 1991 concerning Public Business Sector Companies authorized the sale and privatization of certain public companies owned by the Egyptian State. Pursuant to that law, in 1993 a request was issued for bids for the shares of ENBC.
3 After nationalization, ENBC became part of the Egyptian General Organization for Food Industries pursuant to Law 60 of 1963 concerning Public Organizations (wholly-owned state organizations). In 1983, ENBC became a company organized under Law 97 of 1983 concerning Public Sector Companies. ENBC was later transformed into a company organized under Law 203 of 1991 concerning Public Business Sector Companies.

AHMED G. ABOU ALI
ATTORNEY AT LAW

8.      The bid of MAC Investments was accepted, after which MAC Investments and AI agreed, with the knowledge and consent of the Food Industries Company,  to a joint purchase of the shares in  ENBC. MAC Investments subsequently nominated MAC Beverages Limited ("MAC Beverages"),  a  company of Jersey, the Channel Islands as an additional purchaser of shares, and AI nominated Soft Drink Services  Company ("SDSC"), a Georgia corporation as an additional purchaser. AI and SDSC are subsidiaries of The Coca-Cola Company,  as is The Coca-Cola Export  Corporation.  MAC Investments and MAC Beverages (the "MAC Companies") are entirely independent companies. Neither The  Coca-Cola Company, nor any of its subsidiaries, has any ownership interest in the MAC Companies.

9.      Following  negotiations  with  the  Egyptian government,  a  Share  Sale  and  Purchase Agreement  was  executed  effective  April  20,1994.  Pursuant  to  the  Share  Sale  and  Purchase Agreement, the four companies acquired the stock of ENBC in the following percentages:

|  |  |
|---|---|
| MAC Beverages: | 53% |
| MAC Investments: | 5% |
| SDSC: | 40% |
| AI: | 2% |

10.     There was  no  acquisition or transfer of the assets of ENBC; the buyers acquired only the shares of ENBC.

11.     Pursuant  to  the  terms  of  the   Share Sale and Purchase Agreement, 30% of the shares of ENBC were sold  to the Egyptian public and 10% were sold to ENBC's Employee Shareholders'

_AGA_

AHMED  G. ABOU ALI
ATTORNEY  AT LAW

Association following the acquisition. These transfers were made entirely from the shares of ENBC acquired by SDSC. Currently, SDSC has no ownership interest in ENBC and AI owns approximately 3.5% of the shares of ENBC.

12.    Since its establishment and continuously up to the present day, ENBC has been a joint stock company with its shareholders having limited liability under Egyptian law both before and after the acquisition of its shares in 1994. ENBC, therefore, is a separate legal entity and has separate capacity under Egyptian law; its shareholders enjoy limited liability and are not liable for the actions of the company whether in contract or in tort.

13.    Prior to submission of the bid for the purchase of ENBC by AI, my firm performed a due diligence investigation of ENBC on behalf of AI. As part of that investigation, we reviewed pending litigation and other claims against ENBC. The investigation did not reveal any pending claims by members of the Bigio family against ENBC.

14.    Recently, my firm reviewed certain court files in Egypt to ascertain whether and to what extent members of the Bigio family have pursued their claims in Egyptian courts. Our review indicated that the Bigios have filed at least ten lawsuits regarding sequestration of the property by the Egyptian Government. Some of these cases appear to be cases that were previously dismissed that were reinstated under new reference numbers. Three lawsuits were filed in 1980 against various Egyptian private and governmental entities (but not ENBC) regarding the sequestration of other property adjacent to the Heliopolis Site. Since December 1993, the Bigios have filed at least six other actions in Egypt against various entities of the Egyptian government and ENBC asserting that the Bigios are the true owners of the property of the Heliopolis Site. To the best of my knowledge, each of these later suits was filed after our initial due diligence investigation on

AGA

AHMED G. ABOU ALI
ATTORNEY AT LAW

behalf of AI had been completed. The court records indicate that of the ten lawsuits we located, all but two were dismissed for lack of prosecution by the claimants and are no longer pending. (Attached hereto as Exhibit A is a chart setting forth information about the cases that we were able to glean from court records.). The court files that we reviewed provide no explanation as to why, in eight of the ten cases, the Bigios as claimants permitted their cases to be dismissed for want of prosecution.

15.    Review of the Constitutional case, Case No. 55\4, filed by the Bigios, indicate that on the date of the sequestration of the Heliopolis Site, the Bigios held the Egyptian nationality.

16.    Currently there are two cases pending (one appears to have been reinstated after being dismissed for want of prosecution). One of these, Case 384/95 in the South Giza Commercial Court, was brought by the heirs of Geosias Rofail Bigio (being: Bahia Salmon, Salma Ferial and Ralph Geosias Bigio) against the Minister of Public Business Sector, the Food Industries Company, ENBC and the Central Audit Agency. The allegations in that case are as follows:

(a)    Claimants allege that they are owners of all the land and buildings of the properties known as: 14 Aswan Street, Heliopolis; 14A, 14B, 14C and 14D Aswan Street, Heliopolis; and 3 Warshat Rabat Street, Heliopolis. Neither originals or copies of any deeds of title were ever deposited with the court or even referenced in the files. It is our understanding that ENBC occupies and leases only the plot known as No. 14A Aswan Street.

(b)    Claimants allege that they and their devisee (excluding the wife) were subjected to certain sequestration laws and decrees. Claimants further allege that the Constitutional

AHMED G. ABOU ALI
ATTORNEY AT LAW

Court decided (in cases filed by third parties not involving the Bigios) that the sequestration decrees were illegal in certain respects and that the Sequestration Administration, as a result, notified claimants of the removal of their properties (as listed in the said notification) from under the sequestration, including the property referred to in their complaint, subject to the applicable rules pertaining to the sale of the properties to third parties. Review of the notification in question indicate prima facie it only concerns Mr. Geosias Rofail Nessim Bigio and that he only owns a portion (less than 100%) of the claimed properties. There is no indication as to the owner(s) of the remaining portions of the property.

(c) Claimants allege that they have filed the case upon receiving information that the Minister of Public Business Sector (first defendant) decided to cause the Food Industries Company (second defendant) to sell ENBC (third defendant) pursuant to Law 203\91 and that they have the right to demand the Court to prevent the sale and liquidation of ENBC on the basis that part of the assets being sold in fact belong to claimants.

17.    Further proceedings in case 384/95 are scheduled for November 5, 1997, to permit claimants time to join the Ministry of Finance, which claimants contend, possesses pertinent documents. ENBC has requested the Court to dismiss it from the case since ENBC is only a lessee of the property. ENBC also asked the Court's permission to join Misr Insurance Company as owner of record of the property in question.

18.    Even if the Bigios' allegations that the Egyptian government wrongly sequestrated the Heliopolis Site are true, documents submitted by them as claimants in several of the suits filed in Egypt raise questions of whether they have standing to assert a claim for the entire Heliopolis

AHMED G. ABOU ALI
ATTORNEY AT LAW

Site. For example, in the still pending Case 384/1995, the Bigios claimed to have a right to the property as the "Heirs of Geosias Rofail Bigio." In support of their claim, they submitted a letter dated February 7, 1980, alleged to be a notification from the Sequestration Administration of the Egyptian Government to Misr Insurance Company, stating as follows: "we hereby advise you that Mr. Geosias Rofail Bigio owns the following portions in the properties [therein described], which properties were previously sold to Misr Insurance Company." (Emphasis Added). The letter then describes the "portions" of the property that belonged to Geosias Rafail Bigio, which indicates that the Heliopolis Site was owned by persons other than Geosias Rafail Bigio. Therefore, plaintiffs, who claim a right to the property through Geosias Rofail Bigio, may not have a legitimate claim of ownership to the entire Heliopolis Site.

19.    Furthermore, in the three suits filed by the Bigios in 1980 and 1982 (Cases 217/1, 218/1 and 220/1 filed in the Guardianship Court), the Bigios asserted that the Egyptian government issued bonds as compensation to claimants for the nationalization of "B. Bigio & Co", plaintiffs in this case. This raises questions of whether and to what extent the Egyptian government has already compensated plaintiffs.

If plaintiffs' allegations are true and their property was wrongfully sequestrated by the Egyptian government and without compensation, they could and have sought redress under Egyptian law in a suit against the appropriate government entity brought in an Egyptian court under Egyptian law, a party to a lawsuit can join witnesses for bringing evidence before the court and can join other parties with ownership interest in the subject matter. As shown in the various cases shown in Exhibit A, plaintiffs have served various entities of the Egyptian government challenging the sale of ENBC. Although plaintiffs have served the owner of the property, Misr Insurance Company, regarding an adjacent plot, they have not as far as we know served, Misr regarding the

AHMED G. ABOU ALI
ATTORNEY AT LAW

Heliopolis Site. ENBC has sought to join Misr in Case 384\95.

\* \* \*

I declare under penalty of perjury under the laws of the United States of America that to the best of my knowledge the foregoing is true and correct. Executed at Cairo, Egypt on August 19, 1997.

Ahmed G. Abou Ali

AHMED G. ABOU ALI
ATTORNEY AT LAW

**EXHIBIT A**

DECLARATION OF AHMED G. ABOU ALI
August 19, 1997

EXIBIT A

# INFORMATION ABOUT COURT CASES

| | Case Reference | Date Filed | Claimants | Defendants | Remarks | Status / Update |
|---|---|---|---|---|---|---|
| 1. | Case 2171\1 Guardianship Court (case was originally filed as case 4697\1980 South Cairo Court but was referred to the Guardianship Court on jurisdictional grounds) (Information from Constitutional Judgment) | Original Case: April-May 1980 | Not Available | Not Available | Not Available (Not related to ENBC) | Deleted for lack of prosecution by claimants on March 5, 1994. The case was referred in part to the High Constitutional Court which denied claimants' motion for unconstitutionality. |
| 2. | Case 2181\1 Guardianship Court Court (case was originally filed as case 5268\1980 South Cairo Court but was referred to the Guardianship Court on jurisdictional grounds) | Original Case: April-May 1980 | Ralph Geosias Bigio, Bahia Bigio and Salma Ferial | Messiha Tadros, Dia Tadros, Sonia Tadros, Hend Messiha | To annul and void the sale by the Sequestration Admin. Of property located at 3 Warshat Rahat, Heliopolis to Defendants (not related to ENBC) | Deleted for lack of prosecution by claimants on March 5, 1994. The case was referred in part to the High Constitutional Court which denied claimants' motion for unconstitutionality. |

AHMED G. ABOU ALI
ATTORNEY AT LAW

DECLARATION OF AHMED G. ABOU ALI
August 19, 1997

| | Case Reference | Date Filed | Claimants | Defendant | Demands | Status Update |
|---|---|---|---|---|---|---|
| 3. | Case 2201 Guardianship Court (originally 469/81/980 South Cairo Court) | Original Case: April-May 1980 | Bahia Bigio (widow of Geosias Bigio) | Misr Insurance Co., Minister of Finance, Sequestration Administration | To annul and void the sale by the Sequestration Admin. Of property located at 3 Warshat Rabat, Heliopolis to Misr Insurance (not related to ENBC, although same facts and landlord) | Deleted for lack of prosecution by claimants on March 5, 1994. The case was referred in part to the High Constitutional Court which denied claimants' motion fo unconstitutionality. |
| 4. | 354/1993 South Giza Commer-cial Court | December 13, 1993 | Bahia Bigio, Salma Ferial Geosias Bigio | Minister of Public Business Sector, FIHC, ENBC, Central Audit Agency | To prevent the sale and liquidation of ENBC on the ground that part of the assets being sold belong to claimants. | Deleted by court order for lack of prosecution by claimants on January 18, 1994. |
| 5. | 356/1993 South Giza Commer-cial Court | December 13, 1993 | Heirs of Geosias Rofail Bigio, being: Bahia Salmon, Salma Ferial and Ralph Geosias Bigio | Minister of Public Business Sector, FIHC, ENBC, Central Audit Agency | To prevent the sale and liquidation of ENBC on the ground that part of the assets being sold belong to claimants, and seeking an order that defendants not be permitted to challenge claimants' rights. | Deleted by court order for lack of prosecution by claimants on January 18, 1994. |
| 6. | 176/1994 South Giza Commercial Court | July 11, 1994 | Heirs of Geosias Rofail Bigio, being: Bahia Salmon, Salma Ferial and Ralph Geosias Bigio | Minister of Public Business Sector, FIHC, ENBC, Central Audit Agency | To prevent the sale and liquidation of ENBC on the ground that part of the assets being sold belong to claimants. | Deleted by court order for lack of prosecution by claimants on November 14, 1994. |

AHMED  G. ABOU  ALI
ATTORNEY   AT  LAW

**DECLARATION OF AHMED G. ABOU ALI**

**August 19, 1997**

| # | Case Reference | Date filed | Claimants | Defendants | Demands | Status Today |
|---|---|---|---|---|---|---|
| 7. | 17\1994 South Giza Commercial Court | July 11, 1994 | Bahia Bigio, Salma Ferial Geosias Bigio | Minister of Public Business Sector, FIHC, ENBC, Central Audit Agency | To prevent the sale and liquidation of ENBC on the ground that part of the assets being sold belong to claimants. | Deleted by court order for lack of prosecution by claimants on October 8, 1994. |
| 8. | 383\1995 South Giza Commercial Court | December 6, 1995 | Bahia Bigio, Salma Ferial Geosias Bigio | Minister of Public Business Sector, FIHC, ENBC, Central Audit Agency | To prevent the sale and liquidation of ENBC on the ground that part of the assets belong to claimants. | Deleted twice for lack of prosecution by claimants on May 25, 1996 and February 15, 1997 after being renewed once. |
| 9. | 384\1995 South Giza Commercial Court | December 6, 1995 | Heirs of Geosias Rofail Bigio, being: Bahia Salmon, Salma Ferial and Ralph Geosias Bigio | Minister of Public Business Sector, FIHC, ENBC, Central Audit Agency | To prevent the sale and liquidation of ENBC on the ground that part of the assets belong to claimants. | A further session is scheduled on November 5, 1997 to allow claimant to join Minister of Finance so that the Ministry submits originals of documents that claimants view as pertinent. |
| 10. | 167/1997 South Giza Commercial Court (Case Reinstating Case 383\95 referred to above under a new reference) | Around February 1997 | Bahia Bigio, Salma Ferial Geosias Bigio | Minister of Public Business Sector, Minister of Finance (Sequestration Office), FIHC, ENBC, Central Audit Agency | To prevent the sale and liquidation of ENBC on the ground that part of the assets being sold belong to claimants. | First session was scheduled on April 3, 1997. Court scheduled a further session for formalities on October 11, 1997 for proper service of summons. |

AHMED G. ABOU ALI
ATTORNEY AT LAW

# ABOU ALI DECLARATION EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAPHAEL BIGIO, BAHIA BIGIO, | * |
| FERIAL SALMA BIGIO and | * |
| S. BIGIO & CO, | * |
| | * 97 CIV. 2858 (JSM) |
| Plaintiffs, | * |
| | * |
| v. | * |
| THE COCA-COLA COMPANY and | * |
| THE COCA-COLA EXPORT | * |
| CORPORATION, | * |
| | * |
| Defendants. | * |

## SUPPLEMENTAL DECLARATION OF AHMED G ABOU ALI

| | |
|---|---|
| | ) |
| ARAB REPUBLIC OF EGYPT | )ss |
| | ) |

I, Ahmed G. Abou Ali, hereby declare that:

1.      I am an attorney and a member of the law firm of Hassouna & Abou Ali, with offices located at Cairo Center, Fifth Floor, 2 Abdel Kader Hamza Street, Garden City, Cairo Egypt. I have been licensed to practice law in Egypt before the Courts of Appeal since 1988. I make this supplemental declaration in support of Defendants' Motion to Dismiss and/or for Summary Judgment and in Opposition to Plaintiffs' Motion for Partial Summary Judgment. This declaration is based on my own personal knowledge and, where indicated, a review of court records and other governmental records in Egypt.

AhA                    AHMED G. ABOU ALI
                       ATTORNEY AT LAW

2.     Paragraph 3 of my Declaration dated August 19, 1997, contains the following statement:

The individuals and families whose property was sequestrated pursuant to Decrees 140/61 and 138/61 represented a cross-section of the very wealthy upper *class in Egypt and included* <u>*Moslems*</u>*, Copts and Jews.*

I have read plaintiffs opposition papers *(point III, page 10 and point XI, page 23)* in which plaintiffs have suggested that this reference is a concession that the sequestrations were the result of religious persecution or persecution of aliens and that "As Ali concedes".... [the seizures] were aimed at Copts and Jews..". It is obvious that Plaintiffs, consciously, misinterpret the reference. It is quite clear that my statement does not refer to either religious persecution or persecution of aliens. My statement obviously means, contrary to the twisted interpretation of plaintiffs, that the sequestration decrees were not directed at any particular religious group or, for that matter, individuals who were not Egyptian citizens. In fact, many of the names on the decrees were those of Arab Egyptians of the Muslim faith.

3.     In plaintiffs memorandum, they suggest that the 1956 law on Egyptian nationality automatically stripped them of their citizenship *(para 8, Bigio Aff., and point XI, page 23 of plaintiff's memorandum)*. This statement totally contradicts established decisions of the Egyptian Court of Cassation (Supreme Court) which have ruled that the issuance of a new law on Egyptian nationality does not mean the deprivation of such nationality of those who acquired it pursuant to the former laws unless otherwise explicitly stated in the new law. The 1956 law does not contain any such explicit provision. In fact, the Egyptian High Constitutional Court, in a case brought by plaintiffs in Egypt, has determined that the Bigios were citizens of Egypt at the time of the sequestrations at issue (1961) and that their citizenship was only withdrawn when they left Egypt with the intention of not returning to Egypt. In a decision of the High Constitutional Court No.55 for year 4 issued on September 24, 1992, the Court found in part that:

AHMED G. ABOU ALI
ATTORNEY AT LAW

"Whereas the devisee of the plaintiffs [Josias Rofail Bigio] was Egyptian at the time his funds and assets were subjected to sequestration [1961] and that the Egyptian nationality was withdrawn from him after he left the country permanently with the intention of not returning to Egypt; whereas the first and third plaintiffs [Bahia Bigio and Salma Josias Bigio] were also of Egyptian nationality which was withdrawn due to their leaving the country permanently with the intention of not returning to Egypt, and whereas the file included documents concerning the loss of the second plaintiff [Ralph Josias Bigio] of the Egyptian nationality."

4.      With regard to the issue of how long it would take plaintiffs to get resolution in the Egyptian courts, ordinarily, and at present, the majority of cases take a total of about five years before the courts of first instance and the courts of appeal. Should any party submit an objection before the Supreme Court (Court of Cassation) this takes about five years, unless a request to stay the execution of the decision of a court of appeal is submitted, then the Supreme Court would examine this request within six months' time.  Should it agree to the request for stay, a shorter period would be fixed to decide the case. Otherwise, the normal court schedule would be followed.

5.      With regard to the documents attached as Exhibits E through H of Mr. Bigio's affidavit dated October 9,1997, it is not possible to determine from the affidavit of Mr. Bigio whether the documents are authentic or legitimate. However, even if we assume they are what plaintiffs allege they are, they raise a number of questions. For example, the documents contained in Exhibit H indicate that Josias Rofail Bigio, through whom plaintiffs claim ownership through inheritance, did not himself own the entire property in dispute. The first document indicates that Josias Rofail Bigio owned a "share" or "portion" of the land located on Aswan street, the land in dispute.  Article 9 of the second document of Ex. H provides that the "shares" or "portions" of other family members (Nessim Rofail Bigio, Edward Rofail Bigio, Sarina Rofail Bigio, Charles Rofail Bigio and Albert Rofail Bigio) in the property shall be transferred to the State against the compensation provided in Article 9 of Decree 335 (see Articles 9 & 10). Moreover,

AHMED G. ABOU ALI
ATTORNEY AT LAW .

summons prepared by the Bigios in the court cases they filed in Egypt clearly state that Josias Refail Bigio owned only a portion of the land in question. Therefore, even if the documents are valid, plaintiffs would not appear to have a legitimate claim to the entire parcel. Further, the document in Exhibit H set forth a number of conditions precedent governing its effectiveness (see e.g. Articles 4 & 8 of the second document). There is no indication that these conditions were met. In addition, Article 7 provides that "The properties shall be returned burdened with the lease agreements and employees thereon." Therefore, the document did not terminate existing lease agreements like that held by ENBC.

6.      Plaintiff B. Bigio & Company, which was owned by Bahia Salmon Bigio and Salma Bigio, was nationalized in 1963 and the Bigios were compensated in accordance with the nationalization decree. The documents attached to Mr. Bigio's affidavit do not mention this company.

                                        *      *      *

I declare under penalty of perjury under the laws of the United States of America that to the best of my knowledge the foregoing is true and correct.

Executed on November 19, 1997

*Ahmed Abou Ali*

Ahmed G. Abou Ali

                                        AHMED G. ABOU ALI
                                        ATTORNEY AT LAW

# ABOU ALI DECLARATION EXHIBIT C

DECLARATION OF AHMED G. ABOU ALI
April 21, 2003

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RAPHAEL BIGIO, BAHIA BIGIO, FERIAL SALMA BIGIO AND B. BIGIO & CO.,      Plaintiffs, <br><br> v. <br><br> THE COCA-COLA COMPANY and THE COCA-COLA EXPORT CORPORATION,      Defendants. | * * * * * * * * * * * * |

97 CIV. 2858 (JSM)

---

### SECOND SUPPLEMENTAL DECLARATION OF AHMED G. ABOU ALI

ARAB REPUBLIC OF EGYPT    ) ss
    )

I, Ahmed G. Abou Ali, hereby declare that:

1.    I am an attorney and a partner in the law firm of Hassouna & Abou Ali, with offices located at Cairo Center, Fifth Floor, 2 Abdel Kader Hamza Street, Garden City, Cairo, Egypt. I am duly licensed to practice law in Egypt before the Courts of

HASSOUNA & ABOU ALI

DECLARATION OF AHMED G. ABOU ALI
April 21, 2003

Appeal since 1988 and the Supreme Court of Egypt since 1999. I make this second supplemental declaration in support of the Renewed Motion to Dismiss of the Defendant, The Coca-Cola Company and The Coca-Cola Export Corporation. This second supplemental declaration is based on my own personal knowledge and, where indicated, as review of court records and other governmental records in Egypt.

2.      I submitted two supporting declarations previously in this case. Copies of those declarations, dated August 19, 1997 and November 19, 1997 are annexed to the affidavit of Paul A. Straus annexed to Defendants' Notice of Renewed Motion as Exhibits B and C, respectively.

3.      The material averments contained in my two previous declarations remain true and correct. There have been no intervening developments that warrant any change in the statements of fact and conclusions of law averred therein. I point out, however, that The El Nasr Bottling Company ("ENBC") was merged in 1998 into Alexandria Beverages and Industry Company S.A.E, whose name was later amended to The Coca-Cola Bottling Company of Egypt, which is a joint stock company under the Investment laws of Egypt ("TCCBCE"). TCCBCE is still a separate legal entity having separate capacity under Egyptian law and its shareholders continue to enjoy limited liability and are not liable for the actions of TCCBCE or ENBC whether in contract or in tort.

4.      The statute of limitations applicable to a claim for damages based upon tort liability is three years. The claim accrues and the statute of limitations commences to run when the injured party knew of the tort and the person who committed it, but in any event, the tort liability lapses upon the termination of fifteen years from the date the tort first occurred and regardless of when the injured party knew of the tort.

5.      Any claim of trespass, if any, under Egyptian law against TCCBCE/ENBC by the plaintiffs in this case would be barred by the three year statute of limitations.

HASSOUNA & ABOU ALI

DECLARATION OF AHMED G. ABOU ALI
April 21, 2003

TCCBCE/ENBC has occupied the property in question at the Heliopolis site under a lease from Misr Insurance Company ("Misr"), being the registered owner of the site, continuously since approximately 1965.

(a) If the plaintiffs' claim of trespass against TCBCE/ENBC accrued when the occupancy of the property by ENBC commenced in approximately 1965, the claim would have been time barred in 1968 or shortly thereafter.

(b) If the plaintiff's claim of trespass occurred sometime during the period 1977-1980, when the plaintiffs contend that the transfer of the property to Misr was revoked by the Egyptian government and the Egyptian Ministry of Finance ordered Misr to return the property to plaintiffs, the statute of limitations would have expired sometime in 1983 at the latest.

(c) No claim of trespass by plaintiffs against ENBC or anyone else accrued when the privatization sale of ENBC's share capital occurred in 1994, as ENBC's occupancy of the property continued without interruption. Moreover, TCCBCE/ENBC continued to be a joint stock company and the acquiring shareholders consequently did not become liable for any tortious action of ENBC.

Consequently, under Egyptian law, the statute of limitation applicable to Plaintiffs' claim of trespass against TCCBCE/ENBC expired no later than sometime in 1983.

*   *   *

I declare under penalty of perjury under the laws of the United States of America that to the best of my knowledge the foregoing is true and correct.

Executed at Cairo, Egypt on April 21, 2003.

Ahmed G. Abou Ali

HASSOUNA & ABOU ALI