```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
RAPHAEL BIGIO, BAHIA BIGIO, FERIAL  :
SALMA BIGIO and B. BIGIO & CO.      :
                                    :
                     Plaintiffs,    :
              v.                    :       97 Civ. 2858 (BSJ)
                                    :       **Opinion & Order**
THE COCA-COLA COMPANY and THE       :
COCA-COLA EXPORT CORPORATION,       :
                                    :
                     Defendants.    :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/23/10

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

    This action arises out of a 1962 seizure and confiscation of property in Egypt allegedly in violation of international law. The plaintiffs, Raphael Bigio, Bahia Bigio, Ferial Salma Bigio and B. Bigio & Co. ("Plaintiffs" or "the Bigios"), seek damages from the defendants, The Coca-Cola Company and The Coca-Cola Export Corporation ("Defendants" or "Coca-Cola"), for their conduct in connection with the nationalization of the Bigio's property by the Egyptian government. Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiffs' motion for summary judgment on liability. For the reasons set forth below, Defendants' motion to dismiss is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

## BACKGROUND

    The crux of this case is whether Defendants' 1994 purchase of a 42% interest in the Coca Cola Bottling Company of Egypt ("ENBC" or "Coca-Cola Egypt") renders Defendants liable to

1

Plaintiffs for trespass, conversion or unjust enrichment because Coca-Cola Egypt occupies realty and possesses property allegedly taken from Plaintiffs by the Egyptian government in 1962 in violation of international law.

This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a)(2) as all named Plaintiffs are citizens of foreign states, all Defendants are citizens of U.S. States, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

The facts alleged by Plaintiffs have been recounted in detail in four earlier opinions in this case. See Bigio v. Coca-Cola Co., 97 Civ. 2858(JSM), 1998 WL 293990, at *1 (S.D.N.Y. June 5, 1998); Bigio v. Coca-Cola Co., 239 F.3d 440, 444-446 (2d Cir. 2000); Bigio v. Coca-Cola CO., 97 Civ. 2858(BSJ), 2005 WL 287397, at *1-*2 (S.D.N.Y. Feb. 3, 2005); Bigio v. Coca-Cola Co., 448 F.3d 176, 177-78 (2d Cir. 2006). Familiarity with those opinions is presumed.

In their Amended Complaint, Plaintiffs assert the following causes of action: (1) "unlawful taking and exclusion" of Plaintiffs from real property "in violation of the law of nations" (Am. Compl. ¶¶ 45-47); (2) trespass (Am. Compl. ¶¶ 48-51); (3) conversion (Am. Compl. ¶¶ 52-54); (4) civil conspiracy (Am. Compl. ¶¶ 55-61); and (5) unjust enrichment (Am. Compl. ¶¶ 62-67). Now before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and

Plaintiffs' motion for summary judgment on liability. For the reasons set forth below, Defendants' motion to dismiss is granted and Plaintiffs' motion for summary judgment is denied.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." Frasier v. Gen. Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991). The court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff. See California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 515 (1972).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference

3

that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937, 1940 (2009).[1]

## DISCUSSION

As discussed, in the Amended Complaint Plaintiffs assert causes of action for (1) unlawful taking and exclusion "in violation of the law of nations" (Am. Compl. ¶¶ 45-47); (2) trespass (Am. Compl. ¶¶ 48-51); (3) conversion (Am. Compl. ¶¶ 52-54); (4) civil conspiracy (Am. Compl. ¶¶ 55-61); and (5) unjust enrichment (Am. Compl. ¶¶ 62-67). Plaintiffs' allegations fail to state claims for which relief can be granted.

### 1. Unlawful Taking in Violation of the Law of Nations

In Count One, Plaintiffs allege that Defendants "unlawfully took, seized, occupied and detained . . . the properties and assets belonging to [Plaintiffs]" "which had been taken from the Bigios because they were Jewish in violation of the law of nations." (Am. Compl. ¶ 46).

As Defendants point out, this claim is substantially similar to the allegation in the original complaint that "Plaintiffs were and are the owners of land and factories in Egypt which were seized by the Egyptian government without just compensation solely because plaintiffs were of the Jewish faith, in violation of universally accepted norms of the international law of human rights." (Compl. ¶ 5.)

---

[1] Because the Court grants Defendants' motion to dismiss, the Court does not recite the standard for summary judgment.

That original allegation was dismissed by this Court in an opinion that was affirmed by the Second Circuit. See Bigio v. Coca-Cola Co., 97 Civ. 2858(JSM), 1998 WL 293990, at *5 (June 5, 1998) (holding that the alleged "tortious interference with and conversion of plaintiffs' property in Egypt" did not violate the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350); Bigio v. Coca-Cola Co., 239 F.3d 440, 449 (2d Cir. 2000) ("We conclude that the plaintiffs' complaint failed to plead a violation of the law of nations by Coca-Cola.") Because the allegations in Count One of the Amended Complaint do not differ materially from those already dismissed, Count One of the Amended Complaint is barred by the law of the case.[2]

### 2. Trespass to Real Property

#### a. Plaintiffs' allegations

In Count Two, Plaintiffs allege that their land was unlawfully taken from them by the Egyptian government solely because the Bigios are Jewish, and by investing in Coca-Cola Egypt in 1994 "with full knowledge of Plaintiffs' claims, Defendants have unlawfully occupied, possessed, trespassed upon and exploited the Bigios' property." (Am. Compl. ¶ 50).

#### b. Choice of law

As stated, this Court has diversity jurisdiction over this

---

[2] Contrary to Plaintiffs' argument, the Second Circuit's description of Plaintiffs' claim as "the allegedly unlawful taking and refusal to return their property and refusal to compensate them for the taking of the property, all because of their religion," Bigio v. Coca-Cola Co., 239 F.3d 440, 450 (2d Cir. 2000), does not amount to a determination that the claim is a valid cause of action. (Pls.' Mem. Opp. 11-12.)

action. In a diversity action, the Court applies the choice of law rules of the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In general, under New York choice of law principles "the law of the place of the tort governs." Padula v. Lilarn Prop. Corp., 84 N.Y.2d 519, 522, 644 N.E.2d 1001, 1002 (1994). Because the realty at issue is in Egypt, Egyptian law applies.

### c. Violation of international law

As discussed, Plaintiffs allege that the Egyptian government violated international law when it appropriated the Bigios' land in 1962 because they are Jewish. (Am. Compl. ¶ 17.) Plaintiffs then claim that in 1994, Defendants trespassed on their property by purchasing an interest in Coca-Cola Egypt, the government-owned entity to which the land had subsequently been transferred by Egypt. (Am. Compl. ¶ 34.)[3] In Plaintiffs' view, because "the original taking, the 'nationalization' was illegal," "[t]here were a series of trespassers on the property" such that in 1994 Defendants became trespassers "along with those who had been occupying [the property] before." (Oral Arg. Tr. 4.) As counsel for Plaintiffs agreed at oral argument, this contention necessitates determining whether the initial nationalization by Egypt violated international law. (Oral Arg. Tr. 8.)

Both parties have submitted supplemental letter briefs and

---

[3] Plaintiffs must claim that Defendants' trespass occurred in 1994 rather than sometime earlier because the Egyptian statute of limitations for trespass is three years and Plaintiffs filed this suit in April 1997. (Walker Decl. Sept. 17, 2009 at ¶ 9.); (Ali Third Supp. Decl. Aug. 23, 2009 at ¶ 3.)

6

authorities on the topic of whether the Egyptian government's nationalization of the disputed property violates international law. In light of these submissions, it seems evident to the Court that a governmental taking of real or personal property for religiously discriminatory reasons violates international law. See, e.g., U.N. Charter art. 1, para. 3 (stating that a purpose of the United Nations is to "promot[e] and encourag[e] respect for human rights and for fundamental freedoms for all without distinction as to race, sex, language, or religion"); Universal Declaration of Human Rights, arts. 2, 17, G.A. Res. 217(III)A, U.N. Doc. A/810 (1948) (protecting the right to own property free from religious discrimination). The Court therefore assumes for purposes of this motion that a governmental taking of real or personal property for religiously discriminatory reasons violates international law.[4] However, in light of the Amended Complaint's legal infirmities discussed below, the Court need not decide whether this is what happened to the Bigios.[5]

### d. Trespass to real property

The Court's assumption that a governmental taking of real or personal property for religiously discriminatory reasons violates international law does not mean that Plaintiffs have stated

---

[4] This is not a determination that such conduct would violate the "law of nations" for purposes of the Alien Tort Statute. See 28 U.S.C. § 1350 ("The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."). In fact, as discussed, the Second Circuit has already held that "plaintiffs' complaint failed to plead a violation of the law of nations by Coca-Cola." Bigio v. Coca-Cola Co., 239 F.3d 440, 449 (2d Cir. 2000).

[5] Indeed, the Court has substantial doubts as to whether Plaintiffs could make

7

viable tort causes of action. The Egyptian government is not a defendant in this case. Nor are any governmental-owned entities named. Instead, Plaintiffs sue the Coca-Cola Company and the Coca-Cola Export Corporation on the theory that by purchasing an interest in Coca-Cola Egypt--which was an Egyptian-owned company prior to its privatization in 1994--Defendants trespassed upon Plaintiffs' land.

As discussed, Egyptian law applies to Plaintiffs' trespass claim. The Court must therefore determine whether Plaintiffs have stated a claim for trespass against Defendants under Egyptian law.

Federal Rule of Civil Procedure 44.1 controls determinations of foreign law in federal court. It provides, in relevant part:

> In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. P. 44.1.

Rule 44.1 authorizes courts to conduct their own independent research to determine foreign law but it imposes no duty upon them to do so. See Carey v. Bahama Cruise Lines, 864 F.2d 201, 205 (1st Cir. 1988). Thus, "the party claiming foreign law applies carries both the burden of raising the issue that foreign law may apply in an action and the burden of proving foreign law to enable the district court to apply it in a particular case."

---

this showing through admissible evidence.

8

Baker v. Booz Allen Hamilton, Inc., 358 Fed. Appx. 476, 481 (4th Cir. 2009).

Written or oral expert testimony accompanied by extracts from various kinds of foreign legal materials remains the basic mode of proving foreign law. 9A C. Wright & A. Miller, Fed. Prac. & Proc. § 2444 (3d ed.). As foreign law is an issue to be determined by the Court, an expert witness is not required to meet any special qualifications. Id. Indeed, the expert need not even be admitted to practice in the country whose law is at issue. Id. Importantly, "[t]he purpose of expert testimony . . . is to aid the Court in determining the content of the applicable foreign law--not to apply it to the facts of the case. Furthermore, the Court is not obliged to credit the parties' partisan application of the governing law." Minebea Co., Ltd. v. Papst, 444 F. Supp. 2d 68, 182 (D.D.C. 2006).

Both parties have submitted expert declarations on Egyptian law. Plaintiffs' declaration is from Phillip James Walker, a "U.S. based attorney and international legal affairs consultant" who has provided "legal advice, analytical support and expertise in legal and institutional reform to governments, international organizations and private sector entities throughout the Middle East and South Asia." (Walker Decl. Sept. 17, 2009 at ¶¶ 1-2.) Upon review of the Amended Complaint and relevant Egyptian law, Mr. Walker opines that "claims for trespass to real property, conversion and . . . unjust enrichment are all claims that exist

9

or have analogs within Egyptian law . . . ." (Id. ¶ 3.) Regarding Plaintiffs' trespass claim, Mr. Walker is of the opinion that Defendants committed the tort of trespass with their 1994 investment in ENBC (which later became Coca-Cola Egypt) because "when defendants took control of [ENBC], they knew or should have known that ownership of the land was in dispute." (Id. ¶¶ 3, 4, 6, 11.)

Defendants' expert, Ahmed G. Abou Ali, is an Egyptian attorney who has been licensed to practice law in Egypt since 1988. (Ali Third Supp. Decl. Aug. 23, 2009 at ¶ 1.) With respect to Plaintiffs' claim for trespass, Mr. Ali opines that under Egyptian law "there is no claim for trespass to real property when the defendant occupies the real property under claim of right." (Id. ¶ 3.) Because "ENBC has occupied the real estate in question as a leasehold for decades under the same lease with the record owner of the real property since in or about 1965," Mr. Ali states, "ENBC's occupancy of the property under its claim of right under its leasehold is not a trespass under Egyptian law." (Id. ¶ 3.)

The Court first notes that the two declarations are not entirely inconsistent. For example, both experts state that Egyptian law provides for actions for trespass to real property. However, only Mr. Ali's declaration speaks to whether a trespass claim may lie when the defendant occupies land under claim of right. By contrast, Mr. Walker makes the conclusory assertion

10

that, contrary to "the claim that defendants have no liability to the Bigios due to the lease with Misr Insurance," Defendants trespassed on Plaintiffs' land in 1994 by taking control of ENBC while "they knew or should have known that ownership of the land was in dispute." (Walker Decl. Sept. 17, 2009 at ¶ 6.)

The Court credits Mr. Ali's declaration with respect to the effect under Egyptian law of a lease or other claim of right on a trespass claim. First, only Mr. Ali is licensed to practice law in Egypt. While an expert need not be admitted to practice in the country whose law is at issue, the Court still considers this a relevant factor in deciding the weight to be given Mr. Ali's opinion. See 9A C. Wright & A. Miller, Fed. Prac. & Proc. § 2444 (3d ed.). In addition, as discussed, because the purpose of expert testimony is to aid the court in determining the content of the applicable foreign law, rather than to apply it to the facts of the case, Minebea Co., 444 F. Supp. 2d at 182, Mr. Walker's conclusory, partisan statement that Defendants trespassed on Plaintiffs' land despite the existence of a lease or other claim of right is less helpful to the Court than Mr. Ali's succinct statement of Egyptian law. (See Ali Third Supp. Decl. ¶ 3 ("[T]here is no claim for trespass to real property when the defendant occupies the real property under claim of right.").) The Court therefore relies on Mr. Ali's declaration as an accurate description of Egyptian law.

Plaintiffs' allegations proceed as follows: Plaintiffs' land

11

was seized by Egypt in 1962 in violation of international law (Am. Compl. at 1); the land "was initially administered by the Egyptian Ministry of Finance, Department of Liquidation" (Am. Compl. ¶ 23); the land was then "turned over to Misr Insurance Company, a business wholly owned by the government of Egypt" (Am. Compl. ¶ 23); and eventually "the Bigios' businesses, factories, and equipment were . . . consolidated with other assets to form ENBC" which "operated a production line on the Bigio real estate property for many years." (Am. Compl. ¶¶ 24, 33). Thus, according to Plaintiffs, from 1962 to 1993, the Egyptian government or entities wholly owned by it occupied the Bigios' land.

Plaintiffs then allege that in 1993, "the Egyptian government announced that it would privatize ENBC" and in 1994 "a consortium including two subsidiaries of Coca-Cola . . . acquired [a 42%] interest[] in ENBC." (Am. Compl. ¶ 34.)[6] Plaintiffs allege that this is when Defendants' trespass occurred: "In 1994 the Bigios' properties were sold or leased to the Defendants and their subsidiaries and affiliates, who purchased and occupied the properties with full knowledge of the unlawful seizure, thereby unlawfully taking and occupying the Bigios' assets and trespassing on their property." (Am. Compl. ¶ 10.)

Crucially, the Amended Complaint alleges that during the

---

[6] "The remaining interests were acquired by two other businesses, MAC Investments (5%) and MAC Beverages Limited (53%)." (Am. Compl. ¶ 34.) Neither business is alleged to be affiliated in any way with the Egyptian government.

12

1994 privatization "the Bigios' properties were sold or leased to the Defendants." (Am. Compl. ¶ 10 (emphasis added).) That is, Plaintiffs claim that beginning in 1994 Defendants were present on the Bigios' land pursuant to a claim of right.[7] As discussed above, under Egyptian law there can be no trespass when a defendant occupies the real property under a lease or other claim of right. (Ali Third Supp. Decl. ¶ 3.) Therefore, Plaintiffs fail to state a trespass claim against Defendants.[8]

Plaintiffs interpose four unavailing objections to this conclusion. First, they argue that Defendants are liable because they "advised or directed" ENBC "to occupy and use the property on which the trespass was committed." (Pls.' Mem. Opp. 14-15.) But the Egyptian's government trespass allegedly occurred in 1962, well before the present Defendants were alleged to be on

---

[7] While at oral argument Plaintiffs' counsel refused to acknowledge that there was "a lawful lease of any kind," (Oral Arg. Tr. 4.), to the extent that this position denies the existence of a lease, it is contradicted by the allegation of the Amended Complaint quoted above. Likewise, Plaintiffs' memorandum in opposition to Defendants' motion to dismiss incorrectly argues that "[t]here is no mention of such a lease anywhere in the Complaint." (Pls.' Mem. at 15.) In fact, the Amended Complaint does reference a lease. Of course, on a motion to dismiss, it is a complaint's allegations that control, not the arguments of counsel.
  Also, the notion that Defendants were present under a lease or other claim of right is consistent with prior opinions in this case. See Bigio v. Coca-Cola Co., 97 Civ. 2858(JSM), 1998 WL 293990, at *1 (S.D.N.Y. June 5, 1998); Bigio v. Coca-Cola Co., 239 F.3d 440, 444-446 (2d Cir. 2000) ("The complaint alleges that sometime after 1993, Coca-Cola purchased or leased the plaintiffs' property from ENBC . . . ."); Bigio v. Coca-Cola CO., 97 Civ. 2858(BSJ), 2005 WL 287397 (S.D.N.Y. Feb. 3, 2005); Bigio v. Coca-Cola Co., 448 F.3d 176, 177-78 (2d Cir. 2006) ("[T]he state-owned entity then holding the property . . . sold or, according to defendants, leased the bottling plant here in issue to a joint venture in which a substantial interest was purchased by the Bigios' former tenant, Coca-Cola . . . .").
[8] While the 1979 decree of the Egyptian Ministry of Finance may have given Plaintiffs the right to retrieve their personal and real property upon satisfying certain condition, it also provided that the returned realty would remain subject to any leasehold. (Am. Compl. Ex. 7 at 3, art. 7 ("The properties are to be returned, along with any rental burden and active occupants." (emphasis added)).)

the scene; they could therefore not have advised or directed the Egyptian government or its wholly-owned entities to trespass on Plaintiffs' land.  Second, Plaintiffs argue that ENBC was Defendants' agent in committing the trespass, contending that when Defendants invested in Coca-Cola Egypt, "that entity became the agent of Coca-Cola for the express purpose of capitalizing on the Egyptian [soft drink] market."  (Pls.' Mem. Opp. 20.)  But as Defendants argue, this makes no logical sense.  ENBC was not Defendants' <u>agent</u> in the 1994 acquisition (the act which Plaintiffs claim gives rise to Defendants' tort liability); it was the <u>object</u> of that acquisition.  Third, Plaintiffs claim that "[i]t appears from the record that at all relevant times [ENBC] or its predecessors occupied this land, and when defendants took control of that company, they knew or should have known that ownership of the land was in dispute."  (Walker Decl. Sept. 17, 2009 at ¶ 6.)  However, Plaintiffs' Egyptian law expert does not explain how this is relevant under Egyptian law--for example, that such knowledge would trigger an exception to the general principle of Egyptian law that there can be no trespass when a defendant occupies land under a claim of right.

 Fourth, and finally, Plaintiffs argue that they have alleged that Defendants acted as joint venturers with ENBC in trespassing upon Plaintiffs' property.  (Am. Compl. ¶ 37 ("[A]t all times since 1994 Coca-Cola had an ownership interest in Coca-Cola Egypt

and <u>exercised control of its operations</u>." (emphasis added)); ¶ 56 ("Defendants conspired with and aided and abetted [ENBC] . . . ."); ¶ 56 ("Defendants have a substantial financial stake in the success of the operations conducted on the Bigios' property by the subsidiaries, affiliates and other entities <u>with which they acted in concert</u>." (emphasis added)); ¶ 60 ("Defendants knowingly and substantially assisted the principal violations committed by their subsidiaries, affiliates, and co-conspirators.")) However, this is irrelevant. Even if Defendants had purchased the entirety of ENBC--rather than only purchasing 42% and allegedly exercising control over it--the trespass was committed by the Egyptian government. Defendants were present under a lease or other claim of right, which under Egyptian law precludes their liability.

In addition, while it is irrelevant whether Defendants controlled ENBC, the Court also finds that the allegations in the Amended Complaint with respect to such control fail to satisfy the pleading standards set forth in <u>Ashcroft v. Iqbal</u>, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009). Plaintiffs' allegations with respect to Defendants' control of ENBC (quoted above) fail to plead sufficient facts to allow the Court to find the allegations plausible. <u>Id.</u> Instead, Plaintiffs offer "mere conclusory statements." <u>Id.</u> Indeed, the facts which <u>are</u> adequately plead in the Amended Complaint show that all that changed in 1994 was that Defendants purchased 42% of ENBC. (Am. Compl. ¶¶ 34, 37.)

That act creates a shareholding, not a joint venture. The fact that Defendants intended to profit from their investment does not convert that relationship into a joint venture; every investor is motivated by profit. And the fact that Defendants called their relationship with ENBC a "joint venture" in a 10-K filing with the SEC, (Pls.' Mem. Opp. 14), does not amount to a legal concession that it was a joint venture for purposes of tort liability.

For these reasons, the Court GRANTS Defendants' motion to dismiss Count Two.

### 3. Conversion

In Count Three, Plaintiffs allege that "Defendants unlawfully . . . converted to their own use the non-real estate assets (consisting of business entities, factories, bottling lines and factory equipment) belonging to the Bigios, which had been taken from the Bigios because they are Jewish in violation of the law of nations." (Am. Compl. ¶ 53). Egyptian law applies to this claim. See Padula v. Lilarn Prop. Corp., 84 N.Y.2d 519, 522, 644 N.E.2d 1001, 1002 (1994).

Plaintiffs' conversion claim fails because most of these assets are real property, not personal property. Factories, bottling lines and other equipment affixed to land are realty covered by Plaintiffs' trespass claim. See In re City of N.Y., 11 N.Y. 3d 353, 360, 899 N.E.2d 933, 938 (2008) (stating that factory equipment is real property when permanently annexed to

16

realty and adaptable to the realty's use or purpose).[9]

Plaintiffs also contend that Defendants converted two types of property which are not real property: (1) Plaintiffs' "business entities" (Am. Compl. ¶ 53)--such as "stock in the companies absorbed into Coca-Cola Egypt" (Pls.' Mem. Opp. 19)-- and (2) Plaintiffs' factory equipment that had been moved to a different location, and thus, not permanently installed. (Pls.' Mem. Opp. 19 n.8.). However, under Egyptian law acquiring stock in a joint stock company like ENBC does not constitute a trespass to personal property that is occupied or held by the joint stock company. (Ali Third Supp. Decl. ¶ 6.) Indeed, under Egyptian law, "acquiring shareholders are not liable for any torts or unjust enrichment acts or omissions committed by a joint stock company like [ENBC,] the shares of which they acquire." (Id.) And, as discussed above, there are insufficient pleadings that Defendants were more than mere investors in ENBC.

For these reasons, Plaintiffs' conversion claim must be dismissed.

### 4. Civil Conspiracy; Aiding and Abetting

In Count Four, Plaintiffs allege that "Defendants conspired with and aided and abetted their subsidiaries and affiliates"-- including ENBC--in trespassing and converting Defendants' property. (Am. Compl. ¶ 56).[10]

---

[9] The Court cites New York property law because Plaintiffs agree that Egyptian law is substantially the same. (Pls.' Mem. Opp. 18.)
[10] The Court relies on New York law regarding civil conspiracy and aiding and abetting liability because both parties cite it and neither party suggests

17

Specifically, Plaintiffs contend that when Defendants invested in ENBC, ENBC became Defendants' agent. (Pls.' Mem. Opp. 20.) But as already discussed, ENBC was the object of Defendants' investment, not their agent. Next, Plaintiffs assert that Defendants aided and abetted the Egyptian government in committing trespass and conversion by providing substantial assistance to ENBC in the form of the 1994 investment and the "control of the operations of [ENBC] which Defendants assumed, through which they ratified [ENBC]'s ongoing trespass." (Pls.' Mem. Opp. 21.) However, a claim for conspiracy or aiding and abetting cannot stand without a sufficient allegation of an underlying, primary tort. See Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 301, 316 (S.D.N.Y. 2010) (conspiracy); Abu Dhabi Comm. Bank v. Morgan Stanley & Co., 651 F. Supp. 2d 155, 186 (S.D.N.Y. 2009) (aiding and abetting). Here, the Court has found that Plaintiffs fail to state claims for the primary torts of trespass and conversion. In addition, as discussed above, the allegations in the Amended Complaint with respect to Defendants' alleged control over the operations of ENBC fail to satisfy Iqbal's pleading requirements.

For these reasons, the Court GRANTS Defendants' motion to dismiss Plaintiffs' civil conspiracy and aiding and abetting claim.

### 5. Unjust Enrichment

---

that Egyptian law differs.

In Count Five, Plaintiffs allege that Defendants have been unjustly enriched by unlawfully acquiring and occupying Plaintiffs' land. (Am. Compl. ¶¶ 62-67). Egyptian law applies to this claim. See Padula v. Lilarn Prop. Corp., 84 N.Y.2d 519, 522, 644 N.E.2d 1001, 1002 (1994).

Egyptian law recognizes the concept of unjust enrichment. Article 179 of the Egyptian Civil Code provides: "A person . . . who without just cause enriches himself to the detriment of another person, is liable to the extent of his profit, to compensate such other person for the loss sustained by him . . . ." (Ali Third Supp. Decl. ¶ 7.)

Plaintiffs' claim for unjust enrichment fails because (1) it is no different from Plaintiffs' unsuccessful claims for trespass and conversion; (2) Plaintiffs have not plausibly alleged that Defendants enriched themselves without just cause; and (3) Plaintiffs have not alleged that Defendants' purchase of shares of Coca-Cola Egypt caused any loss to Plaintiffs. Therefore, the Court GRANTS Defendants' motion to dismiss Count Five.

### 6. Plaintiffs' Motion for Summary Judgment

As the Court grants Defendants' motion to dismiss, Plaintiffs' motion for summary judgment on liability is denied as moot.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Amended Complaint is GRANTED in its entirety and Plaintiffs' motion for summary judgment on liability is DENIED as moot. The Clerk of Court is directed to close this case.

**SO ORDERED:**

_____
BARBARA S. JONES
**UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York
         August 23, 2010